IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALEB A. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00401 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| EMPLOYEES AT SUMNER CO. JAIL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Caleb Taylor, an inmate at the Sumner County Jail in Gallatin, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 (Doc. No. 1) and two applications to proceed in this Court without prepaying fees and costs (Doc. Nos. 2 and 3).

### I. Applications to Proceed as a Pauper

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff submitted both a short form (Doc. No. 2) and a long form (Doc. No. 3) application to proceed *in forma pauperis*. The short form application is accompanied by a copy of Plaintiff's trust account statement. (Doc. No. 2 at 3–9.) Plaintiff also submitted a "Certificate of Prisoner Institutional/Trust Fund Account Activity," apparently signed by the custodian of his account. (Doc. No. 1 at 47.) Because Plaintiff's applications reflect that he cannot pay the full filing fee in advance, the applications (Doc. Nos. 2 and 3) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

### II. Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to

state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff lists thirty-three defendants at the beginning of the complaint (Doc. No. 1 at 1–7) and refers to one additional entity—Southern Health Partners—as a defendant in the body of the complaint (*id.* at 29). The spelling of several defendant's names and titles is inconsistent throughout the complaint. To maintain clarity, the Court will spell each defendant's name exactly as it first appears in the complaint but spell each defendant's title using the common English spelling. The Court has grouped similar defendants together as follows.

Plaintiff names four entities as defendants: Employee's at Sumner Co. Jail, Sumner County Law District, Sumner County Jail, and Sumner County General Sessions Court. (*Id.* at 1, 6.) He names ten individual defendants who, based on the allegations in the complaint and their titles, serve in a supervisory capacity at the Sumner County Jail: Sheriff Sonny Weatherford, Administrator Sonya Troutt, Captain Doug Canner, Internal Affairs Officer Keith Bean, Lieutenant Lesiley Bean, Lieutenant Jack Babbit, Sergeant Heather Driver, Sergeant Coldwell, Sergeant Cockerin, and Sergeant Desk. (*Id.* at 4–6.) Plaintiff also sues a Specialist named Pettey. (*Id.* at 3.) Plaintiff next names ten officers: Chanler, Blake, Hopper, Keane Glover, Petterson, Innitelly, Josha Holland, Christpher Greenhodge, Jason Gegory, and Julis Edwards. (*Id.* at 2–5.) Finally, Plaintiff names nine defendants allegedly involved in medical care at the Sumner County

Jail: Southern Health Partners, Dr. Matthew, Head Nurse Shearal, Head Nurse Sharon, and Nurses Erica Lee, Bree, Jenniffer, Angel, and Kaylie. (*Id.* at 4, 7, 29.)

The complaint's statement of facts includes handwritten allegations on an "Inmate Statement Form" (*id.* at 9) and twenty-six attached pages (*id.* at 10–35). Most pages are redundant because Plaintiff repeats a set of underlying allegations, either verbatim or nearly verbatim, before changing the defendant to whom they apply. (*Id.* at 12, 15, 18, 21, 24 (applying repeated allegations to Defendants Babbit, Glover, Greenhodge, Edwards, and Gegory, respectively); *id.* at 25, 26, 27, 28 (applying repeated allegations to Defendants Troutt, Canner, Keith Bean, and Weatherford, respectively); *id.* at 30, 31, 32, 33, 34, 35 (applying repeated allegations to Defendants Shearal, Bree, Sharon, Erica Lee, Angel, and Jenniffer, respectively). The style of punctuation, grammar, and spelling also make the complaint somewhat difficult to comprehend. Nonetheless, drawing the necessary reasonable inferences and accepting any specific factual allegations as true, the Court has established the following summary of events for the purpose of conducting an initial review.

1. **September 2018 Incident**

Plaintiff alleges that, at 11:30 a.m. on September 11, 2018, he was given a one-hour recreation while lunch was being served. (Doc. No. 1 at 10.) During that time, another inmate gave his lunch tray to Plaintiff, and Plaintiff ate that tray at a table while Officer Julis Edwards distributed trays to other inmates at their cells. (*Id.*) Edwards did not stop when he got to Plaintiff's cell, so Plaintiff told Edwards that he did not give Plaintiff a tray. (*Id.*) A standoff ensured.

Officer Edwards responded that Plaintiff already received his tray. (*Id.*) Plaintiff explained that another inmate gave him that try, and he did not receive his own tray. (*Id.*) Edwards refused to give Plaintiff a tray and told him to "lock down." (*Id.*) Plaintiff said he would not lock down

until he got his own lunch tray, and Edwards again refused to give him one. (*Id.*) Plaintiff said he was "not locking down." (*Id.*) Edwards called for assistance. (*Id.*)

Four jail officials arrived minutes later—Officer Jason Gegory, Officer Keane Glover, Officer Christpher Greenhodge, and Lieutenant Jack Babbit. (*Id.*) Plaintiff tried to explain his side of the standoff, and someone told him to "shut the f*** up" and go to his cell. (*Id.*) Plaintiff responded that he would not go to his cell until he got his lunch tray. (*Id.*) Someone threatened to spray Plaintiff with "P2 freeze pepper spray" if he did not "lock down." (*Id.*) Plaintiff said "f*** yall" and turned to walk away. (*Id.*)

Someone sprayed Plaintiff with pepper spray, but the spray did not affect him. (*Id.*) Officer Gegory grabbed Plaintiff, and Plaintiff alleges he was not being aggressive because he "threw [his] hands up while [his] back was fac[]ing" Gegory. (*Id.* at 11.) Someone "body slam[m]ed" Plaintiff onto the concrete floor, breaking Plaintiff's shoulder. (*Id.*) The five jail officials—Edwards, Gegory, Glover, Greenhodge, and Babbitt—then "jerked" Plaintiff's arm behind his back and handcuffed him. (*Id.*) The five officials dragged and threw Plaintiff out of the pod door and into a restraint chair. (*Id.*) Plaintiff told Officer Gegory that he needed to see medical because his shoulder was broken. (*Id.*) Gegory told "the officer in the tower" to call and inform medical that Plaintiff required treatment, but Plaintiff did not receive treatment at that time. (*Id.*)

Eventually, Plaintiff was in so much pain that he started yelling and cursing, at which point Officer Greenhodge tried to put Plaintiff back in his cell. (*Id.*) Plaintiff told Greenhodge that he would not return to his cell until he received medical treatment. (*Id.*) Greenhodge then grabbed Plaintiff's broken shoulder. (*Id.*) Plaintiff "quickly swung from" Greenhodge's grasp to avoid further injury to his shoulder. (*Id.* at 11–12.) Greenhodge then "body slam[m]ed" Plaintiff's shoulder onto the concrete floor, adding a broken collarbone (*id.* at 12) and arm (*id.* at 25) to

4

Plaintiff's already-broken shoulder. Officer Greenhodge then jerked Plaintiff's arm behind his back, causing Plaintiff's shoulder to pop three times, before handcuffing him. (*Id.* at 13.)

Officer Greenhodge ultimately made Plaintiff wait for medical treatment "over six hours." (*Id.* 11–12.) After he got to medical, Plaintiff underwent an x-ray that confirmed his broken shoulder and collarbone. (*Id.* at 12.) According to Plaintiff, however, medical staff refused to x-ray his broken right arm (*id.* at 25), despite Plaintiff requesting it "several times" (*id.* at 29).

### 2. Medical Care Following Arrest in November 2018

Plaintiff alleges that he had a "fractured right humerus" when he was arrested and taken to Sumner County Jail on November 7, 2018. (*Id.* at 30.) Plaintiff tried to obtain medical treatment for this fracture "numer[o]us times" over "several months," but medical staff refused. (*Id.*)

### 3. April 2019 Incident

Plaintiff alleges that he was subjected to "excessive and deadly force" at 12:00 p.m. on April 2, 2019. (*Id.* at 9.) At 2:00 a.m. on April 4, Plaintiff filed a grievance and requested two inmate statement forms from supervisors. (*Id.*) Supervisors refused to send Plaintiff these two forms because he was housed in a "direct supervised pod." (*Id.*) According to Plaintiff, the officers working in this kind of pod cannot leave, so it is the supervisors' responsibility to supply inmates with forms. (*Id.*) Plaintiff specifically alleges that Sergeant Heather Driver violated a security code by looking at Plaintiff in the pod, ignoring him, and walking out without providing him the two requested forms. (*Id.*)

## B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court

therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Improper Defendants

Four defendants are not proper parties under Section 1983. They are "Employee's at Sumner Co. Jail," "Sumner County Law District," Sumner County Jail, and Sumner County General Sessions Court. First, a collection of employees at a correctional facility, considered as a group, is not a "person" for the purpose of Section 1983. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) (holding that prison "medical departments are not 'persons' under § 1983"). As a matter of law, therefore, Plaintiff cannot state a claim against "Employee's at Sumner Co. Jail". This same rationale precludes any claim against both Sumner County Jail, *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that a prison facility "is not a 'person' or legal entity subject

to suit under 42 U.S.C. § 1983"), and Sumner County General Sessions Court, *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) (citation and footnote omitted) ("A state court is not a 'person' for purposes of 42 U.S.C. § 1983 . . . .").

Finally, Plaintiff names "Sumner County Law District," which the Court construes as an attempt to sue the district attorney. Plaintiff does not specify the capacity in which he is suing this defendant. (Doc. No. 1 at 6.) Instead, he simply refers to the office itself without identifying any particular person associated with the office by name. Indeed, after listing it as a defendant, Plaintiff does not reference "Sumner County Law District" or the district attorney in the complaint again. The complaint, therefore, falls far short of providing sufficient notice to any individual associated with "Sumner County Law District" that he or she might be subject to individual liability. *See Goodwin v. Summit Cty.*, 703 F. App'x 379, 382 (6th Cir. 2017) ("If 'a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether' the defendants received sufficient notice that they might be held individually liable." (quoting *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001))). Accordingly, the Court construes this as an official-capacity claim, and official-capacity claims against District Attorney Generals in Tennessee are barred from federal suit under the Eleventh Amendment absent a specific exception, none of which apply here. *See Sentell v. Tennessee*, No. 3:12-CV-593, 2013 WL 3820021, at *2 (E.D. Tenn. July 23, 2013) (citations omitted).

Although the Court may construe Plaintiff's references to various Sumner County institutions as an attempt to name Sumner County itself as a defendant, doing so would be futile. For Plaintiff to state a claim against Sumner County, he must allege that he "suffered a constitutional violation" and that the County's "policy or custom directly cause the violation." *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc.*

7

*Servs.*, 436 U.S. 658, 690–92 (1978)). Here, Plaintiff does not allege that any of the constitutional deprivations he suffered were the result of a policy or custom of the county. Accordingly, Plaintiff fails to state a claim against Sumner County, and the four defendants listed above—"Employee's at Sumner Co. Jail," "Sumner County Law District," Sumner County Jail, and Sumner County General Sessions Court—will be dismissed.

### 2. Dismissal of Defendants Desk and Petterson

Plaintiff also names Sergeant Desk and Officer Petterson as defendants, but does not make any allegations against them in the body of the complaint. Even under the liberal construction afforded to *pro se* plaintiffs, the Court "is not required to accept non-specific factual allegations and inferences," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Defendants Desk and Petterson will be dismissed.

### 3. Purely Supervisory Defendants

Plaintiff alleges that he is suing four supervisor defendants "for letting" other jail officials use excessive force against him. (Doc. No. 1 at 25–28.) These four defendants are Sheriff Weatherford, Administrator Troutt, Captain Canner, and Internal Affairs Officer Keith Bean. (*Id.*) "Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, a claim against a supervisor official "must fail . . . unless 'the supervisor encouraged [a] specific incident of misconduct or in some other way

8

directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 803 (quoting *Combs*, 315 F.3d at 558). Here, Plaintiff's vague allegation that these four defendants "let" jail officers use excessive force against him does not reflect the type of "direct participation" necessary for liability under Section 1983. Plaintiff, therefore, fails to state a claim against Defendants Weatherford, Troutt, Canner, and Keith Bean.

### 4. Failure to State a Claim Against Medical-Care Defendants

Plaintiff alleges that he did not receive adequate medical care after an incident of excessive force in September 2018, and in the months following his arrest in November 2018. He brings this first claim against nine defendants, and the second claim against eight defendants. As explained below, Plaintiff's allegations are inadequate to support either claim.

As to the September 2018 incident, Plaintiff asserts a claim against Southern Health Partners, Dr. Matthew, Head Nurse Shearal, Head Nurse Sharon, and Nurses Erica Lee, Bree, Jenniffer, Angel, and Kaylie.[1] (Doc. No. 1 at 29.) The Court assumes that Plaintiff named Southern Health Partners as a defendant because it is the private entity contracted to provide medical care to inmates at the Sumner County Jail. "A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function." *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). Like Sumner County, however, Southern Health Partners "'cannot be held liable on a respondeat superior theory,' but rather 'for a policy or custom of'"

---

[1] Plaintiff identifies this defendant as Nurse "Haylie" in the statement of facts (Doc. No. 1 at 29), but the list of defendants includes a Nurse Kaylie (*id.* at 7)—not Haylie—and so the Court assumes this claim refers to Nurse Haylie.

Southern Health Partners itself. *Id.* (quoting *Johnson*, 398 F.3d at 877). Here, Plaintiff does not allege that he suffered a constitutional violation as a result of Southern Health Partners' policy or custom. Accordingly, Plaintiff fails to state a claim against Southern Health Partners.

The alleged excessive force underlying this claim will be discussed in more detail below. In brief, Plaintiff alleges that jail officials body slammed him onto the concrete floor, resulting in a broken shoulder, collarbone, and arm. He alleges that these jail officials waited over six hours to take him to medical. That is where the remaining eight defendants to this claim become relevant.

Plaintiff is a convicted prisoner. (Doc. No. 1 at 8.) The Eighth Amendment imposes a duty on prison officials to provide adequate medical care to convicted prisoners. *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736–37 (6th Cir. 2015) (citing *Estelle*, 429 U.S. at 103). "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 104).

"A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez*, 555 F.3d at 550 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, the Court concludes that the injuries Plaintiff allegedly sustained as a result of the excessive force in September 2018 were sufficiently serious to satisfy the objective component. Plaintiff nonetheless fails to state a claim against the eight remaining defendants tied to this claim because he has not satisfied the subjective component.

The subjective component requires a plaintiff to show that each defendant had "a 'sufficiently culpable state of mind.'" *Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (quoting *Farmer*, 511 U.S. at 835). To do so, Plaintiff must "allege facts which, if true, would

show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Dominguez*, 555 F.3d at 550 (quoting *Comstock*, 273 F.3d at 703). This standard does not require Plaintiff to "show that the defendant acted with the very purpose of causing harm," but it does require a showing of "something greater than negligence or malpractice." *Winkler*, 893 F.3d at 891 (citing *Farmer*, 511 U.S. at 835).

Plaintiff has not established the subjective component for two reasons. First, "[a]s a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citing *Estelle*, 429 U.S. at 107). "'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Here, Plaintiff alleges that he received treatment after arriving at medical following the September 2018 incident, including an x-ray that confirmed his broken shoulder and collarbone. Plaintiff takes issue with the medical staff's alleged refusal to x-ray his broken arm as well. But this difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation.

Second, "the subjective component of a deliberate indifference claim must be addressed for each officer individually." *Winkler*, 893 F.3d at 891 (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)). That is, a plaintiff must allege that each specific defendant "was aware of facts from which he or she could infer a substantial risk of serious harm." *Id.* Here, Plaintiff does not explain how any particular defendant was involved in the alleged denial of adequate medical care. Instead, he merely recites the allegations that form the basis of this claim

11

in general terms before listing the defendants to whom this claim applies. (Doc. No. 1 at 29 ("While I was at medical x-ray was done verifying that my shoulder was broke but then x-ray of my arm was refused.").) That is insufficient to satisfy the subjective component. Thus, Plaintiff fails to state a claim for denial of adequate medical care following the September 2018 incident against Dr. Matthew, Head Nurse Shearal, Head Nurse Sharon, and Nurses Erica Lee, Bree, Jenniffer, Angel, and Kaylie. Because Plaintiff does not reference her anywhere else in the complaint, Nurse Kaylie will be dismissed as a defendant.

Plaintiff fails to state a claim for denial of adequate medical care following his November 2018 arrest for this same reason. He asserts this claim against seven defendants: Dr. Matthew, Head Nurse Shearal,[2] Head Nurse Sharon, and Nurses Erica Lee, Bree, Jenniffer, and Angel. (Doc. No. 1 at 30–35.) As relevant to this claim, Plaintiff alleges that he had a "fractured right humerus" when he was arrested and taken to Sumner County Jail in November 2018, and that "medical staff" refused to treat him. Assuming that this alleged injury satisfies the objective component of this claim, Plaintiff does not explain how any individual defendants were involved in the alleged denial of treatment. Plaintiff, again, merely sets forth sparse allegations in general terms before listing the defendants to whom the claim applies. (*Id.* at 30 ("I . . . tried numerus times to get the medical staff to treat my right humerus but refuses to treat my right humerus.").) Accordingly, Plaintiff fails to state a claim against Defendants Matthew, Shearal, Sharon, Erica Lee, Bree, Jenniffer, and Angel. These seven defendants will be dismissed as parties.

---

[2] Plaintiff identifies this defendant as "Nurse Sheri" in the statement of facts (Doc. No. 1 at 30), but the list of defendants includes a Head Nurse Shearal (*id.* at 7)—not Sheri—and so the Court assumes that Plaintiff is referring to Head Nurse Shearal.

### 5. September 2018 Incident

Plaintiff asserts a claim against five defendants for using excessive force against him on September 11, 2018. (Doc. No. 1 at 10–24.) These five defendants are Officer Julis Edwards, Officer Jason Gegory, Officer Keane Glover, Officer Christpher Greenhodge, and Lieutenant Jack Babbit. To briefly recap, Plaintiff alleges that he had a verbal dispute with Officer Edwards regarding a lunch tray, whereupon Edwards called for assistance, and the other four defendants responded. At some point, one of these five defendants allegedly sprayed Plaintiff with pepper spray, and when that had no effect, body slammed Plaintiff onto the concrete floor. The five officials allegedly then jerked Plaintiff's arm behind his back, handcuffed him, and dragged him to a restraint chair. Eventually, according to Plaintiff, he was in so much pain that he started yelling and cursing, at which point Officer Greenhodge tried to put Plaintiff back in his cell. Greenhodge allegedly body slammed Plaintiff's shoulder onto the concrete floor, and then jerked Plaintiff's arm behind his back to handcuff him. As a result of this alleged incident, Plaintiff claims to have suffered a broken shoulder, collarbone, and arm.

Under the Eighth Amendment, prisoners have the right to be free from excessive force by prison officials. *Farmer*, 511 U.S. at 832 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). This claim has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). For the objective component, a plaintiff must demonstrate that a prison official inflicted pain that was "sufficiently serious" based on "contemporary standards of decency." *Id.* at 585 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). The subjective component requires the Court to consider whether the force applied by a prison official was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 580 (quoting *Hudson*, 503 U.S. at 7).

The Eighth Amendment also requires prison officials to "take reasonable measures to guarantee the safety of the inmates," meaning that a prison official may be liable for failing to prevent another prison official from harming an inmate. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 832). To state a claim under this theory of relief, a prisoner must show that the prison official "acted with 'deliberate indifference' to a substantial risk that [another prison official] would cause [the prisoner] serious harm." *Id.* (collecting cases). The objective component of this claim requires the prisoner to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). The subjective component requires the plaintiff to show that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837).

Here, accepting Plaintiff's allegations as true, as the Court must at this stage in the proceedings, the Court concludes that Plaintiff has stated Eighth Amendment claims against Defendants Edwards, Gegory, Glover, Greenhodge, and Babbit. The alleged injuries that Plaintiff sustained from this incident satisfy the objective component of either an excessive force claim or a failure-to-protect claim. Additionally, while Plaintiff does not provide a great deal of detail about the specific actions of each defendant during this incident, he does allege that all five defendants were present when one of them pepper sprayed him and body slammed him onto the concrete floor. This allegation reflects that these five defendants knew Plaintiff faced an excessive risk to his health, and disregarded that risk by failing to intervene. Indeed, at least one of the five defendants must have carried out the first body slam, and Plaintiff alleges that all five defendants participated in jerking Plaintiff's arm behind his back and handcuffing him after the first body slam. As to the second body slam, it is unclear whether all five of these defendants were present, but Plaintiff specifically alleges that Greenhodge body slammed Plaintiff onto the concrete floor a second time.

Accordingly, Plaintiff has stated an excessive force claim against Defendant Greenhodge, and either excessive force or failure-to-protect claims against Defendants Edwards, Gegory, Glover, and Babbit.

Plaintiff also alleges that, after Officer Greenhodge body slammed him the second time, Greenhodge jerked Plaintiff's arm behind his back, handcuffed him, and made him wait for medical treatment for over six hours. The Court concludes that these allegations state a claim against Officer Greenhodge for denial of adequate medical care. In short, Plaintiff's alleged injuries satisfy the objective component of this claim, and the subjective component may be satisfied where a prison official is "aware of a prisoner's obvious and serious need for medical treatment and delay[s] medical treatment of that condition for non-medical reasons." *Darrah*, 865 F.3d at 372 (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004)). From the face of the complaint, the Court cannot determine whether there were non-medical reasons for Officer Greenhodge to allegedly delay taking Plaintiff to medical, and so the Court will not dismiss this claim at this juncture.

### 6. Failure to State a Claim Based on April 2019 Incident

Plaintiff also asserts a claim based on a vague allegation of excessive force in April 2019. He alludes to suffering "excessive and deadly force" at 12:00 p.m. on April 2 and then lists nine defendants to whom this claim applies: Lieutenant Lesiley Bean, Sergeants Coldwell and Cockerin, Specialist Pettey, and Officers Chanler, Blake, Hopper, Innitelly, and Holland. (Doc. No. 1 at 9.) But Plaintiff does not include any details about this alleged incident or how any specific defendant was involved in it. This amounts to a conclusory assertion of legal liability that is insufficient to state a claim. *See Gilmore v. Corr. Corp. of. Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) ("A

complaint must contain allegations respecting all the elements to sustain a recovery under some viable legal theory."). Accordingly, these nine defendants will be dismissed.

Finally, Plaintiff alleges that he filed a grievance about this incident on April 4 but did not receive two inmate statement forms he requested. He alleges that Sergeant Heather Driver violated a "security code" by coming into the pod, ignoring Plaintiff, and then leaving without providing the requested forms. These allegations fail to state a claim because "a prisoner has no constitutional right to an effective prison grievance procedure, *see Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and claims related to violations of prison policies do not state a constitutional violation, *see Grinter* [*v. Knight*], 532 F.3d [567,] 574 [6th Cir. 2008]." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017). With no other specific allegations pertaining to Defendant Driver, Plaintiff fails to state a claim against her and she will be dismissed.

### III. Conclusion

For these reasons, Plaintiff's excessive force or failure-to-protect claims against Defendants Edwards, Gegory, Glover, Greenhodge, and Babbit will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order, as will Plaintiff's claim against Defendant Greenhodge for denial of adequate medical care. All other claims and defendants will be dismissed.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE